

## IN THE SUPERIOR COURT OF GUAM

By:_____

| | |
|---|---|
| JOHN P. POLITI,<br><br>              Plaintiff,<br><br>vs.<br><br>PAULINE A.S. MANUBAY,<br><br>            Defendant. | Domestic Case Nos. DM0366-23, DM0359-23<br><br>**DECISION AND ORDER RE: MOTION TO ENFORCE SETTLEMENT** |

## INTRODUCTION

This matter came before the Honorable John C. Terlaje on April 28, 2026, after the parties had fully briefed the Court on Defendant's Motion to Enforce Settlement. Attorney Joaquin Arriola represented the Plaintiff, John P. Politi. Attorney William Gavras represented the Defendant, Pauline A. S. Manubay. After reviewing the record and the relevant law, the Court **GRANTS** Defendant Manubay's Motion to Enforce Settlement and **DENIES** Plaintiff Politi's Countermotion for Sanctions.

## PROCEEDURAL BACKGROUND

On February 23, 2026, Manubay filed her Motion to Enforce Oral Settlement Agreement. Politi filed his Opposition to Motion to Enforce Oral Settlement Agreement and Counter Motion for Sanctions on March 3, 2026. Manubay filed her Reply and Opposition to Counter Motion on April 6, 2026. On April 22, 2026, Politi filed his Sur-Reply to Motion to Enforce Oral

Page 1 of 11

Agreement and Reply to Opposition. Manubay filed her Supplement Brief in Response to Politi's Sur-Reply on May 17, 2026 with leave of the Court.

## FACTUAL BACKGROUND

Politi and Manubay married on June 26, 2011. D.'s Mot. to Enforce Oral Settlement Agreement; Mem. of P. & A.; Decl. of William L. Gavras, Esq. ("Mot. to Enforce") at Ex. B (Feb. 23, 2026). The parties separated on January 1, 2023. *Id.* They share one minor child born in 2013. *Id.*

On October 24, 2025, Manubay became a registered agent and director of the Island Cancer Center ("ICC"). Pl.'s Sur-Reply to Mot. to Enforce Oral Agreement; Pl.'s Reply to D.'s Opp. to Pl.'s Counter Mot. for Sanctions ("Pl.'s Sur-Reply") at 2–5, Ex. A (Apr. 22, 2026). Manubay has significant assets held in the ICC. *Id.* at Ex. A. During her January 29, 2026 deposition, Manubay did not admit to being a director of the ICC. *Id.* at 2, 7; D.'s Reply to Pl.'s Opp. to D.'s Mot. to Enforce Settlement ("D.'s Reply") at 7 (Apr. 6, 2026).

On February 17, 2026, the Court ordered that Manubay be deposed in response to Politi's request that Manubay be deposed. Mot. to Enforce at 1–2; Pl.'s Opp. to D.'s Mot. to Enforce Oral Settlement Agreement & Counter Mot. for Sanctions ("Opp. & Counter Mot.") at 2 (Mar. 3, 2026). It should be noted that Politi had previously filed a motion to compel Manubay to disclose her connection to the ICC. *See* Mot. Hr'g (Feb. 17, 2026). At the hearing for the motion to compel, the Court ordered that Manubay be deposed that day. *Id.*

Manubay and her attorney attended that deposition on February 17, 2026 at the Arriola Law Firm. Mot. to Enforce at 2; Opp. & Counter Mot. at 2. A court reporter was present at that

meeting. Mot. to Enforce at 2; Opp. & Counter Mot. at 2. Politi claims that Manubay brought no additional discovery. Opp. & Counter Mot. at 2.

Before the deposition began, the parties began settlement negotiations. Mot. to Enforce at 2; Opp. & Counter Mot. at 2. Manubay asserts that this negotiation was a continuation of earlier negotiations. Mot. to Enforce at 2, Ex. A. Politi asserts that Manubay's attorney, Gavras, approached Politi's attorney, Arriola, before the deposition began to begin settlement negotiations. Opp. & Counter Mot. at 2.

After negotiations began, Arriola produced a written draft of the Integrated Divorce, Custody and Property Settlement Agreement ("Draft Agreement") and read the terms of the Settlement on the record. Mot. to Enforce at 2, Ex. A; Opp. & Counter Mot. at 3. The decision to state the terms of the Settlement on the record was made in part to release the attending court reporter. Opp. & Counter Mot. at 3; Mot. to Enforce at Ex. A. The terms included divorce on the grounds of irreconcilable differences, property distribution, lump sum payment from Politi to Manubay, tax matters and alternating dependency, debts and hold-harmless provisions, joint legal and physical custody, 50/50 child support, no child support or arrears due, and no future child support, mutual waiver of inheritance rights and subsequently acquired property, exchange of records, business documents, and firearms. Mot. to Enforce at 3–4, Ex. A & B. They disagree on whether Manubay's ICC assets should be part of the marital estate and which passport Politi should retain, among other issues. Mot. to Enforce at Ex. A; Opp. & Counter Mot. at 3–5. Manubay and her attorney categorize these disagreements as "bugaboos". Mot. to Enforce at 2, Ex. A. The Draft Agreement also included the following language:

> Notwithstanding the foregoing, each party acknowledges, understands and accepts the duty and obligation to investigate the property holdings of the other Party

determining an appropriate settlement. Each Party has made full and complete disclosure to the other Party of all his or her property, and neither Party has knowledge of any property of any kind in which the Parties, or either of them, have any beneficial interest, except the property identified, listed, and distributed in this Agreement.

*See id.* at Ex. B.

After the terms were recited on the record, Attorney Gavras stated, "Looks like we have a deal, Jay." Mot. to Enforce at Ex. A. Attorney Arriola responded, "Okay, thank you. And we'd like to get this all in writing before Tuesday's next hearing, and signed, otherwise it expires." *Id.* The parties shook hands and went off record. *Id.* at 2, Ex. A. Manubay did not provide any additional discovery after this interaction. Opp. & Counter Mot. at 3.

## DISCUSSION

Manubay argues that the parties have reached a binding settlement. Mot. to Enforce at 3–4. Manubay claims that all essential terms of the settlement had been reached. *Id.* Manubay also claims that although there were still some details to work out, the oral agreement to the essential terms is sufficient to enforce the settlement. *Id.*

In response, Politi argues that there was no meeting of the minds and that Manubay has acted in bad faith. Opp. & Counter Mot. at 3–6. Politi argues that all discovery regarding each party's property must have been disclosed prior to the Settlement becoming enforceable. *Id.* And, because Manubay never disclosed her ICC assets, he argues that there is no settlement. *Id.* at 3–5. He argues that Manubay's failure to disclose her ICC assets shows that she acted in bad faith. *Id.* at 5–6. And he files a countermotion for sanctions because he claims Manubay continues to refuse to produce discovery, which violates the Court's order and Guam's Rules of Civil Procedure. *Id.* at 6–8.

In her Reply, Manubay argues that there is no condition precedent and that the discovery issue is immaterial. *See* D.'s Reply. Manubay argues that the only evidence of a condition precedent Politi cites to is the Draft Agreement, not the Transcript. *Id.* at 2. She also argues that the provision in the Draft Agreement is not a condition precedent, but rather boilerplate language for a settlement agreement. *Id.* at 2–3. She also argues that the Transcript should be the only document relied upon for the terms of the Settlement because the Transcript represents the only terms agreed upon. *Id.* at 5. She argues that even if there was a condition precedent, the failure to disclose Manubay's ICC assets does not violate the condition because it is immaterial to the case at hand considering that it became Manubay's property after separation and that Politi was aware of Manubay's ICC assets. *Id.* at 6–7. Therefore, Manubay argues, the countermotion for sanctions should be denied. *Id.* at 7–10.

In his Sur-Reply, Politi argues that Manubay's repeated denial of discovery regarding her ICC assets defeats Manubay's arguments. *See* Pl.'s Sur-Reply. He argues Manubay's position at ICC is material to her asset and income information and that her repeated denial of interest in ICC shows her bad faith. *Id.* at 2–7. Additionally, the repeated denial of discovery has delayed the discovery process, and she should be sanctioned for this. *Id.* at 7–9.

In her supplemental brief, filed with leave of the Court, Manubay argues that Politi is mischaracterizing the failure to show discovery and that Politi's arguments for sanctions fail as a matter of law. *See* D.'s Suppl. Br. in Resp. to Pl.'s Sur-Reply ("D.'s Suppl. Br.") (May 18, 2026). First, Manubay argues that Politi's additional factual evidence in the Sur-Reply is irrelevant because the documents about the value of ICC do not establish Manubay's interest, and the ICC is post-separation property. *Id.* at 1–3. Manubay then argues that Politi cancelled the deposition that

would have resulted in correct information and instead chose to engage in settlement discussions. *Id.* Manubay argues that both the language of the transcript and the Draft Agreement extinguish all Politi's claims because the terms read in the Transcript include broad accord and satisfaction language. *Id.* at 3–5. Manubay argues that Politi's claim for attorney's fees is barred by the agreement. *Id.* at 5–7. She also argues that she has not violated rules of civil procedure because a settlement has been reached. *Id.* at 7–8. And finally, she argues that because Politi and his attorney acted as if they assented to the agreement reached in the transcript, a meeting of the minds exists because it was objectively apparent to Manubay. *Id.* at 8–9.

The Court agrees with Manubay. The Settlement Agreement as found in the Transcript is binding. And Politi's countermotion is denied because the discovery sought is irrelevant and immaterial.

The Court will first address the oral settlement agreement and then the discovery issues.

**I.    The Oral Settlement is Binding and Enforceable.**

Politi argues that the Settlement Agreement is not binding and enforceable because the parties did not fully agree to the essential terms, there was a condition precedent that was not met, and there are multiple financial issues that the Settlement did not account for. Manubay argues that the settlement agreement was binding and enforceable because the Transcript represents the essential terms of the Settlement agreed to, there was no condition precedent, and the other issues Politi argues have been resolved with accord and satisfaction found in the Settlement.

Contract principles are applied in interpreting settlement negotiations. *Blas v. Cruz*, 2009 Guam 12 ¶ 11; *Sharrock v. McCoy*, 2016 Guam 7 ¶ 87. "Essential elements of a contract include an offer, acceptance, and consideration." *Blas*, 2009 Guam 12 ¶ 18; 18 GCA § 85102.

The Court will address whether the Settlement as found in the Transcript was agreed to, whether the terms yet to be worked out were essential, whether there was a conditional precedent, and finally if Politi's additional concerns are extinguished by accord and satisfaction.

### a. The Transcript Represents the Agreed Upon Settlement Agreement.

"Consent of the parties to a contract must be free, mutual and communicated by each to each other." *Blas*, 2009 Guam 12 ¶ 18. "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." 18 GCA § 85316. An oral settlement placed on the record is binding and enforceable once the parties have agreed on all essential terms. *Sharrock*, 2016 Guam 7 ¶¶ 95–105.

Here, the parties, who are in a divorce and custody dispute, agreed to all essential terms as found in the Transcript. Although Politi and Manubay left the meeting on February 17, 2026 with a Draft Agreement, the parties did not agree to the written Draft Agreement. Instead, during the meeting, the parties listed terms included divorce on the grounds of irreconcilable differences, property distribution, joint legal and physical custody, and 50/50 child support. They then agreed to all these terms at the end of the meeting by shaking hands and orally stating "looks like we have a deal" and "okay, thank you. And we'd like to get this all in writing before Tuesday's next hearing, and signed, otherwise it expires." This exchange indicates that the parties agreed to the oral terms, but needed time to sign the written Draft Agreement; otherwise, the written agreement would expire. This is further indicated by the breadth of the terms on the record, which discuss financial separation, custody agreements, and division of property. The only terms that Politi states were not agreed to were Manubay's ICC assets and the passport Politi should retain. The first is a discovery issue which will be discussed later. The second is clearly not essential to the dispute

because it has little to do with the current divorce or custody dispute. Perhaps it could have some effect on the future, but it is not currently a dispute the parties have. Therefore, all essential terms were on the Transcript. The Draft Agreement is not a part of the agreed-upon terms of the Settlement.

### b. There was No Condition Precedent.

Additional evidence outside of the agreed-upon contract can be admitted to determine if there was a condition precedent to the contract. *Leong v. Deng*, 2002 Guam 2 ¶ 18. However, "conditions precedent are not favored and an agreement will be strictly construed against a party asserting that its provisions impose a condition precedent." *Wasson v. Berg*, 2007 Guam 16 ¶ 28 (quoting *Helzel v. Super. Ct.*, 176 Cal.Rptr. 740, 745 (Ct.App.1981)).

There is no condition precedent. The Draft Agreement includes a clause in which each party agrees they have sent all discovery. The parties did not qualify their oral agreement to the signature on the page of the Draft Agreement, so it is not part of the Settlement. However, the Draft Agreement could be used as evidence of a condition precedent, if such a condition exists. The clause at issue here states that the parties have already disclosed to each other all their property interests. The clause does not state that if discovery was not made, the parties will not agree to a Settlement. Therefore, objectively, it does not appear as if the parties were agreeing to the Settlement so long as all discovery was made.

And, the behavior of Politi does not seem to indicate that he agreed to the Settlement with a condition precedent. The parties met to depose Manubay. Instead, the parties began settlement negotiations. It is irrelevant who began the negotiations because at any time Politi could have stopped negotiations for the deposition. The court reporter remained with the parties for

approximately three hours before the settlement terms were recorded. Politi could have deposed Manubay that day, chose not to, and agreed to the Settlement. Therefore, the actions of Politi do not objectively show that the clause in the Draft Agreement was meant as a condition precedent.

### c. Accord and Satisfaction Discharges Prior Claims.

"Accord and satisfaction is an agreement between parties to settle a bona fide contract dispute in which one party waives the right to sue in exchange for consideration less than the total amount owed under the contract." *Hemlani v. Hemlani*, 2016 Guam 16 ¶ 23.

Politi's claim for attorney's fees has already been addressed by the Settlement. Mr. Arriola, Politi's attorney, put on the record "[Politi] will make a lump sum payment of $150,000 in full satisfaction and accord of all terms and conditions of this settlement . . . This sum includes cost of sanctions, attorney's fees associated with John's motion to compel for sanctions, which was just heard this morning." Mot. to Enforce at Ex. A. This is clear accord and satisfaction language. Politi is offering a specified amount in exchange for any attorney's fees associated with that motion to compel. Additionally, both parties agreed to pay their own attorney's fees that were not associated with the motion to compel. *Id.* The Settlement, therefore, resolves the issue of additional claims to attorney's fees.

## II.   The ICC Deposition is Unnecessary and Irrelevant.

Politi's counterargument rests entirely on the relevancy and necessity of Manubay disclosing her ICC assets. He argues that not only are the ICC assets marital property, but that the assets are relevant to understanding Manubay's current financial situation. Manubay argues that Politi's decision not to depose Manubay shows that the deposition was irrelevant. She also argues

that because Manubay's assets are separate property, the assets are not essential to the dispute at hand.

The Court agrees with Politi that Manubay's ICC assets are relevant, but disagrees that the ICC is marital property. The Court also agrees with Manubay that Politi had an opportunity to depose Manubay regarding her ICC assets and decided to engage in settlement negotiation instead.

### a. The ICC Assets are Separate Property.

"Separate property means. . . property and earnings of a spouse . . . while living separate and apart from the other spouse. . ." 19 GCA § 6101(a)(2). "Community property means property acquired by either spouse during marriage which is not separate property." 19 GCA § 6101(b).

Manubay's ICC assets are not part of the marital property. Although Politi quotes part of the statute defining separate property, which states that property acquired after a divorce decree is entered is separate property, he neglected to consider the next part of that same statute. Property acquired after separation is also considered separate property. 19 GCA § 6101(a)(2). The parties have been separated since January 2023. Manubay acquired her assets in ICC in October of 2025, more than two years after separation. Therefore, the ICC assets are not part of the marital property.

### b. The Settlement Resolves Any Discovery Dispute.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ." Guam R. of Civ. P. 26(b)(1). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Guam R. of Evid. 401. "A party is under a duty to supplement at appropriate intervals its disclosures. . ." Guam R. of Civ. P. 26(e)(1).

Manubay had a duty to disclose her ICC assets. Although the ICC assets were not marital property, it is relevant to the dispute at hand. Manubay's ICC assets are evidence of Manubay's current income and financial needs. This is relevant to both the custody agreement and the separation of financial interests between Polity and Manubay.

However, Manubay fulfilled her duty to disclose the ICC assets. Manubay was ordered by the Court to attend a deposition during the February 13, 2026 meeting. Manubay did so. Manubay and her attorney went to the Arriola Law Firm to complete the deposition as ordered by the Court. This fulfills her obligation to supplement the other party with disclosure. Politi agreed to have settlement negotiations without Manubay's deposition. As stated earlier, the court reporter was available for three hours before the Settlement terms were read on the record. Politi could have insisted on the deposition before settlement negotiations and chose not to do so. Therefore, Manubay attempted to give disclosure as was ordered by the Court, and both parties decided to enter settlement negotiations instead.

## CONCLUSION

Therefore, the Court **GRANTS** the Motion to Enforce Settlement and **DENIES** the Countermotion for Sanctions.

**SO ORDERED**, this ___7/31/26___ .


_____
**HONORABLE JOHN C. TERLAJE**
**Judge, Superior Court of Guam**

Page 11 of 11